**In re L.M.W. & L.A.W.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Assigned on Briefs July 28, 2008.

Sept. 3, 2008.

Permission to Appeal Denied by
Supreme Court Oct. 6, 2008.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, L.I.

Robert E. Cooper, Jr., Attorney General and Reporter, and Joshua D. Baker, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

## OPINION

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Father appeals the termination of his parental rights to his two biological children, L.M.W. and L.A.W. The trial court terminated his parental rights on the grounds of abandonment by failure to visit or support, substantial noncompliance with the permanency plan, and persistence of conditions. The trial court also determined that termination of parental rights was in the children's best interests. We affirm the trial court's ruling on the grounds of abandonment by failure to support, substantial noncompliance with the permanency plan, and a determination that

termination of his parental rights is in the children's best interests.

The two minor children at issue in this case, L.M.W. and L.A.W., first came to the attention of the Department of Children's Services ("Department") in March 2006, when the Department received anonymous referrals. The referrals stated that the children were dirty, smelled like urine, were outside without shoes, and that the children's mother sold drugs. The Department investigated the referrals by meeting with family members and informally meeting with the children and their mother. At the meeting, the children appeared healthy, although there were two large ringworms on one child's face. As a result of the interviews, the caseworker learned that the children had been present when severe domestic abuse occurred within the home and that the children's mother often sold drugs.

The children were taken into custody by the Department in March 2006 and placed in the foster home where they have resided since. After they were taken into custody, the children's father, L.I. (hereinafter "Father") signed a permanency plan, a copy of which was mailed to him where he was incarcerated at the time.

Father's next contact with the Department was in January 2007, when he met with the Department to discuss custody of his children. A revised permanency plan was signed which laid out the requirements that would have to be met in order to regain custody of his children. Within four months, Father was to have obtained stable housing; completed parenting, alcohol, and drug assessments; submitted to random drug screens; received treatment

for drug addiction; and completed a psychosexual evaluation. Father began visitations with the girls in January, but only visited them twelve times between January and May 2007, and only one visit occurred between April 29, 2007 and August 29, 2007.[1]

Following May 2, 2007, Father had no contact with the children. Acting on behalf of the Department, Residential Services Incorporated ("RSI") attempted to contact Father multiple times by phone.[2] The Department also attempted to contact him by leaving messages at his mother's home where he resided, sending letters, and calling his last known telephone number, all to no avail.

Additionally, Father took no steps to comply with the requirements of his permanency plan. Despite the Department twice finding funding for Father to complete his parenting, alcohol, and drug assessments at no cost to him, Father never made the appointments. Father never obtained his own residence but continued to live with his mother. While Father submitted to two drug screens, other attempts to schedule random drug screens were thwarted by Father failing to maintain contact with the Department.

Father also paid no support for his children. Father admits that he knew he owed child support for his children but never attempted to make payments. Father had sporadic employment during this period, but was receiving advances on an inheritance and living cost free in his mother's home.

Following the lack of cooperation or contact from Father, the Department filed a petition to terminate parental rights on

---

1. Father admittedly stopped visiting because there was an outstanding warrant due to a violation of his probation and he was afraid that he would be arrested.

2. The Department contracted with Residential Services Incorporated to facilitate the visitation between Father and his children.

August 29, 2007. The grounds cited for termination were abandonment for failure to visit, abandonment for failure to support, substantial noncompliance with the permanency plan, persistent conditions and failure to exercise or establish paternity. A hearing was held, following which the trial court terminated Father's parental rights based on clear and convincing evidence that Father had abandoned the children by failing to visit or support them, failing to comply with the requirements of the permanency plan, and persistence of conditions. The Department abandoned the ground of failure to establish paternity. The trial court also determined that termination of parental rights was in the best interests of the children. This appeal by Father followed.

The only issue presented in Father's brief reads as follows: "The Trial Court erred in terminating Appellant's parental rights to his two (2) minor children." In the argument of his brief, Father concedes, somewhat equivocally, that two of the grounds for termination were established: one, that he willfully failed to support his children; and (2) that he failed to substantially comply with the requirements of the permanency plan.[3] Conversely, he states in his brief that "the real question at hand is whether or not termination of parental rights is in the best interest of [the children]." Although Father appears to have conceded that statutory grounds upon which his parental rights may be terminated have been established, we will briefly discuss two of the grounds found by the trial court and then more thoroughly analyze whether termination of his parental rights is in the best interests of the children.

## ANALYSIS

█ Parents have a fundamental right to the care, custody and control of their children. *Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Hawk v. Hawk,* 855 S.W.2d 573, 577 (Tenn. 1993). This right is superior to the claims of other persons and the government, yet it is not absolute. *In re S.L.A.,* 223 S.W.3d 295, 299 (Tenn.Ct.App.2006).

█ Parental rights may be terminated only where a statutorily defined ground exists. Tenn.Code Ann. § 36–1–113(c)(1); *Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002); *In re M.W.A.,* 980 S.W.2d 620, 622 (Tenn.Ct.App.1998). The petitioner has the burden of proving that there exists a statutory ground for termination, such as abandonment or failing to remedy persistent conditions that led to the removal of the child. Tenn.Code Ann. § 36–1–113(c)(1); *Jones,* 92 S.W.3d at 838. Only one ground need be proved, so long as that ground is proved by clear and convincing evidence. *See In re D.L.B.,* 118 S.W.3d 360, 367 (Tenn.2003). In addition to proving one of the grounds for termination, the petitioner must prove that termination of parental rights is in the child's best interest. Tenn.Code Ann. § 36–1–113(c)(2); *In re F.R.R.,* 193 S.W.3d 528, 530 (Tenn. 2006); *In re A. W.,* 114 S.W.3d 541, 544 (Tenn.Ct.App.2003); *In re C.W.W.,* 37 S.W.3d 467, 475–76 (Tenn.Ct.App.2000) (holding a court may terminate a parent's parental rights if it finds by clear and convincing evidence that one of the statutory grounds for termination of parental rights has been established and that the termination of such rights is in the best interests of the child). Therefore, a court

---

**3.** In Father's brief, it is stated that "[Father] admits that the base statutory criteria for part one of a TPR has been met. The failure to visit after May, 2007 is acknowledged. No support has been paid." ... "The real question at hand is whether or not termination is in the best in interest of L.A.W. and L.M.W."

may terminate a person's parental rights if (1) the existence of at least one statutory ground is proved by clear and convincing evidence and (2) it is clearly and convincingly established that termination of the parent's rights is in the best interest of the child. Tenn.Code Ann. § 36–1–113(c); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn.2007); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn.2002).

■ Whether a statutory ground has been proved by the requisite standard of evidence is a question of law to be reviewed *de novo* with no presumption of correctness. *In re B.T.*, No. M2007–01607–COA–R3–PT, 2008 WL 276012, at *2 (Tenn.Ct.App. Jan.31, 2008) (no Tenn. R.App. P. 11 application filed) (citing *In re Adoption of A.M.H.*, 215 S.W.3d at 810).

### Grounds for Termination

Section 36–1–113(g) of the Tennessee Code identifies nine statutory grounds for the termination of parental rights. *See* Tenn.Code Ann. § 36–1–113(g)(1)–(9) (2005). The trial court terminated Father's parental rights based on three of the statutory grounds: abandonment, failure to comply with the requirements of a permanency plan, and persistent conditions.

■ Parental rights may be terminated upon the ground of abandonment. Tenn. Code Ann. § 36–1–102(1)(A)(i) (2005). A parent abandons a child if for a period of four consecutive months immediately preceding the filing of a petition to terminate the parental rights of the parent, it is established that the parent willfully failed to visit, willfully failed to support, or willfully failed to make reasonable payments toward the support of the child. Tenn. Code Ann. § 36–1–102(1)(A)(i) (2005). Father concedes that he failed to support or make reasonable payments in support of his children for the four months immediately preceding the filing of the petition to

terminate parental rights. The record reveals that Father was employed, at least periodically, during this period and it further reveals that he was receiving an inheritance left to him by his grandmother during this time period, yet Father made no support payments or any other efforts to provide support for his children. We therefore conclude that there is clear and convincing evidence to support the trial court's finding that Father abandoned the children by failing to provide support.

■ Parental rights may also be terminated upon the ground of substantial noncompliance by the parent with the statement of responsibilities in a permanency plan. Tenn.Code Ann. § 36–1–113(g)(2) (2005). When terminating a parent's rights on the ground of substantial noncompliance, the trial court must find that the requirements of the permanency plan that the parent allegedly did not satisfy are "reasonable and related to remedying the conditions which necessitate foster care placement." *In re Valentine*, 79 S.W.3d at 547 (quoting Tenn.Code Ann. § 37–2–403(a)(2)(C)). Here, the requirements in Father's permanency plan were related to the conditions which necessitated foster care placement. The record reveals that the children were at risk due to the illegal drug use and domestic abuse in the home. Accordingly, the requirements of alcohol, drug, and parenting assessments, as well as random drug screens, were reasonable because they were related to remedying these problems.

Father admits that he never completed a clinical interview, an alcohol and drug assessment, or a parenting assessment. The record reveals that he only submitted to two random drug screens within the required months although numerous others were requested. He also failed to obtain housing to provide a safe and stable

home. We therefore conclude that there is clear and convincing evidence to support the trial court's finding that Father was in substantial noncompliance with the permanency plan.

We have determined that at least two statutory grounds for termination have been established. Only one statutory ground need be established. *See In re D.L.B.*, 118 S.W.3d at 367. Therefore, the first requirement for termination of Father's parental rights has been met. Accordingly, we will turn our attention to the only contested issue in this case, whether the Department clearly and convincingly established that termination of the parent's rights is in the best interests of the children. Tenn.Code Ann. § 36–1–113(c); *In re Adoption of A.M.H.*, 215 S.W.3d at 810; *In re Valentine*, 79 S.W.3d at 546.

### Best Interests of the Child

Under Tennessee Code Annotated § 36–1–113(i), the factors looked to in order to determine what is in the children's best interests are:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36–5–101.

Tenn.Code Ann. § 36–1–113(i)(1)–(9) (2005). The foregoing list is not exhaustive and the statute does not require that the trial court find every factor to apply in order to find that termination is in the children's best interests. *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn.Ct.App.2005).

Father's contention that termination of his parental rights is not in the children's best interests is based solely on his assertion that he and the children have a strong bond. We, however, find there is clear and convincing evidence that termination is in the best interests of the children under a majority of the factors.

Father has not made any adjustment of circumstance, conduct, or conditions as to make it safe and in the children's best interests to be in his home. Father has

not obtained stable employment; instead, he has been in and out of jail during their placement in foster care. He has not obtained a residence of his own but continues to live with his mother. While Father claims that he will be entitled to an inheritance, this will not be enough on its own to support himself and his two children. He claims to be drug-free but at the time of the termination hearing had been arrested for simple possession of cocaine.

Father has failed to adjust his circumstances despite reasonable efforts by the Department for such a duration of time that lasting adjustment does not reasonably appear possible. The Department contracted with RSI to provide weekly visitation for Father from January 2007 to August 2007. In April 2007, funding was acquired for Father to obtain his clinical assessments for drug, alcohol and parenting. In June 2007, funding was acquired again for Father's clinical assessments after he had failed to appear for the first appointment. Funding was also secured for Father to have his psychosexual evaluation. The Department mailed letters to his mother's home, made efforts to keep his mother informed of the Department's efforts in an attempt to keep Father informed, contacted his probation officer in attempts to maintain contact, and visited with him when he was incarcerated. Despite all of these efforts by the Department, Father made no effort to take advantage of the services provided to him. After months of ongoing attempts, the Department initiated termination proceedings.

Father did not maintain regular visitation with his children. Significantly, he had but one token visit with the children during the four months preceding the filing of the petition to terminate. We also find it significant that Father had briefly availed himself of the visitation service facilitated by the Department through RSI, and he was fully aware of how to set-up appointments; nevertheless, he failed to maintain regular visitation with his children due to his concern that he might be arrested.

The two children were taken at a young age and placed in a foster care home. The children have stayed in this same foster care placement for two years and have bonded with their foster family. The children consider the other children within the home their brothers and sisters. The children have also undergone counseling in order to deal with the emotional stress of being separated from their parents, but have adjusted well. A change in their caretakers or physical environment is likely to have a detrimental effect on the children's emotional and psychological condition.

In addition to the criminal activity in the children's home that existed prior to their removal, Father engaged in criminal activity outside of the home. As of the termination hearing, Father had pending charges of aggravated assault and simple possession of cocaine. While Father points to two clean drug screens as a positive sign, it cannot be ignored that he failed to submit to more random drug screens that the Department attempted to administer, and he failed to complete an alcohol and drug assessment. Father's denial of a drug problem is also negated by a positive drug screen for cocaine in December 2006. The foregoing undermines Father's claims that he has the ability to provide a healthy and safe home free of drug activity and that he will no longer engage in criminal activity.

As for the final factor to be considered, the record established that Father failed to pay any child support for the children's benefit.

■ The best interests of the child are to be determined from the perspective of the child rather than the parent. *See State, Dept. of Children's Services v. L.H.,* No. M2007–00170–COA–R3–PT, 2007 WL 2471500, at *7 (Tenn.Ct.App. Aug.31, 2007)(citing *White v. Moody,* 171 S.W.3d 187, 194 (Tenn.Ct.App.2004)). Viewing the evidence from the children's perspective, the record shows clear and convincing evidence that the termination of Father's parental rights is in the children's best interests.

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the Department of Children's Services due to Father's indigence.